# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

CRAIG BONNER,

     Plaintiff,

v.                               Case No: 8:19-cv-3076-KKM-TGW

RADIUS GLOBAL SOLUTIONS et al.,

     Defendant.

_____

## <u>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

All three of the remaining parties have filed motions for summary judgment. *See* Plaintiff Craig Bonner's Motion for Partial Summary Judgment (Doc. 63); Defendant Radius Global Solutions' Motion for Summary Judgment (Doc. 64); Defendant Cach, LLC,'s Motion for Summary Judgment (Doc. 65). In sum, Plaintiff Bonner seeks to hold Defendants Radius Global Solutions and Cach, LLC, liable for conduct committed by an unrelated third-party, Defendant Direct Recovery Services. Direct Recovery and Bonner previously settled their outstanding claims,[1] but Bonner continues to proceed against the other two Defendants. After review of the motions, responses, and replies, Radius's and Cache's motions are granted, and Bonner's motion is denied.

---

[1] Bonner resolved his claims against Direct Recovery by accepting Direct Recovery's offer of judgment, but Direct Recovery did not admit any liability in its offer. (Docs. 40 & 75).

## I.    BACKGROUND

No party disputes the following facts. Prior to 2012, Bonner obtained a loan to purchase shutters for his home. (Doc. 63 at 2; Doc. 64 at 2; Doc. 65 at 2). Bonner asserts that the bills "ceased coming," so he believed the debt was paid in full (although he never contends that he paid the bills, thus making his assumption an odd one). (Doc. 63 at 2). At some point, Cach obtained the rights and interests in Bonner's loan.[2] From 2012 until 2019, Cach utilized several entities to attempt to recover the remaining balance of the loan from Bonner. (Doc. 66 at 1–2). Those efforts proved unsuccessful.

On June 25, 2019, Bonner received a letter from Radius regarding the loan. (Doc. 63 at 2–3; Doc. 63-1; Doc. 66 at 2). The letter explained that Radius sought to recover the debt on behalf of Cach. *Id.* The front of the letter contained the following disclosure: "The law limits how long you can be sued on a debt. Because of the age of your debt, CACH, LLC cannot sue you for it, and CACH, LLC cannot report it to any credit reporting agency." (Doc. 63-1). The back of the letter, labeled "Privacy Notice," stated:

> **<u>Information We May Collect</u>**. The Resurgent Companies may collect the following information: (1) information that we receive from your account file at the time we purchase or begin to service your account, such as your name, address, social security number, and assets; (2) information that you may give us through discussion with you, or that we may obtain through your transactions with us, such as your income and payment history; (3) information that we receive from consumer reporting agencies, such as your creditworthiness and credit history, and (4) information that we obtain from other third party information providers, such as public records and databases that contain publicly available data about you, such

---

[2] Bonner appears to challenge the veracity of the proof of the sale of the debt but does not contest that Cach eventually sought to recover the debt or the validity of the underlying debt. (Doc. 69 at 2).

2

as bankruptcy and mortgage filings. All of the personal information that we collect is referred to in this notice as "collected information."

*Id.* The Privacy Notice also disclosed that this information might be shared with affiliate companies in accordance with consumer protection laws and would never be shared with third parties except as permitted under law. *Id.*

On August 22, 2019, Bonner's son called him about a telephone call that he received from someone looking for Bonner and inquiring about a "delinquency." (Doc. 63 at 4–5; Doc. 66 at 2). Bonner claims to have, subsequently, received quite a few threatening phone calls and voicemails from servicers apparently seeking payment on a loan. (Doc. 63 at 5; Doc. 66 at 2).

Importantly, Bonner does not claim that these phone calls were made by Cach or Radius, even though Radius admits that it placed six calls regarding the loan without ever making contact with anyone between August 28, 2019, and November 19, 2019. (Doc. 66 at 3). Bonner maintains that Direct Recovery placed the above-mentioned threatening phone calls and that Cach and Radius conspired with Direct Recovery to violate consumer protection statutes by harassing him. (Doc. 1 at 6–7; Doc. 63 at 5–6). Bonner contends that because these phone calls followed the letter from Radius and Cach and because Cach has a policy of making collection attempts through third parties, it is clear that Direct Recovery, Cach, and Radius were all involved in the allegedly violative phone calls. (Doc. 63 at 22–24).

Bonner filed suit on December 16, 2019, alleging a civil conspiracy under Florida law and violations of the Federal Debt Collection Practices Act and the Florida Consumer Collection Protection Act. (Doc. 1). After Bonner accepted Direct Recovery's offer of judgment, only Radius and Cach remain as defendants. (Docs. 40 & 75). Bonner filed a motion for partial summary judgment, and Cach and Radius filed separate motions for summary judgment.  (Docs. 63, 64 & 65).

## II.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 783 F.3d 1265, 1268 (11th Cir. 2007) (quoting *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1242 (11th Cir. 2001)). "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Johnson*, 263 F.3d at 1243). In reviewing a motion for summary judgment, a court must view evidence and factual inferences in "a light most favorable to the non-moving party, and all reasonable doubts about the facts are resolved in favor of the non-movant." *Id.*

## III.    ANALYSIS

While the parties' motions—particularly Bonner's—lack the clarity expected in federal court papers, the Court discerns two dispositive issues for summary judgment: (1) whether there is sufficient evidence for a jury to find Radius or Cach liable for any

4

wrongdoing by Direct Recovery and (2) whether the June 25, 2019 letter violates either Florida's Consumer Collection Practices Act (FCCPA) or the Fair Debt Collection Practice Act (FDCPA).[3] Because Bonner has put forth no evidence connecting Radius or Cach to Direct Recovery and because the June 25 letter does not violate either statute as a matter of law, the Court grants Defendants' motions for summary judgment and denies Bonner's motion for summary judgment.

## A.   Civil Conspiracy

The crux of Bonner's case rests on allegations that Radius, Cach, and Direct Recovery engaged in a civil conspiracy to violate the FCCPA and the FDCPA by using prohibited tactics like threatening phone calls. (Doc. 63). Bonner does not allege or offer evidence that Radius and Cach directly participated in any violation except the sending of the June 25 letter; as a result, he rests on a theory of conspiracy between the three Defendants that gave rise to the latter phone calls.[4] But Bonner's account of events hinges on speculation as to the relationship between the three Defendants and the timing of their collection efforts. Of course, speculation alone without any evidence fails to satisfy the first element of a civil conspiracy: an agreement between the entities.

---

[3] Bonner concedes these are the two dispositive issues. (Doc. 69 at 1–2).

[4] In his motion for partial summary judgment, Bonner also argues that Radius and Cach are vicariously liable for the actions of Direct Recovery. (Doc. 63 at 17–20). Bonner never raised this theory of liability in his complaint and he cannot do so for the first time in summary judgment absent a motion to amend the pleadings. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Even if he properly pleaded this theory, the vicarious liability argument would fail for similar reasons as his civil conspiracy claim: Bonner cannot establish any connection between Direct Recovery and Radius or Cach.

Under Florida law, the elements of a claim of civil conspiracy are "(1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015). "Agreement is a necessary element of the crime of conspiracy, which is defined as an express or implied agreement of two or more persons to engage in a criminal or unlawful act." *Witmer v. Dep't of Bus. & Prof. Regulation*, 631 So. 2d 338, 342 (Fla. 4th DCA 1994) (finding an allegation of an offer to commit an illegal act insufficient to state a claim for civil conspiracy).

Bonner fails at the first element of conspiracy—he presents no direct evidence of an agreement between the parties. Indeed, he has not presented any evidence that Radius or Cach ever had knowledge of Direct Recovery before being named as codefendants in his lawsuit. And the corporate representatives of both Cach and Radius testified that they had no relationship with Direct Recovery. (Doc. 63-17 at 11 ("I have no idea who [Direct Recovery Services is].");  63-18 at 29 ("Well, there is no affiliation with the other defendant, Direct Recovery.")).

Bonner likewise offers insufficient circumstantial evidence for a reasonable jury to infer the existence of an agreement. His circumstantial evidence consists of (1) the June 25 letter from Radius on behalf of Cach, (2) his testimony that he received calls from Direct Recovery Services after June 25; (3) Cach's practice of employing entities to attempt to recover his debt prior to June 2019, and (4) his testimony that his only

6

outstanding debt was the one owed to Cach. (Doc. 63). Compare this evidence to the evidence presented in *Belcher v. Atlantic Capital Realty, LLC*, No. 6:08–cv–1989–Orl–28DAB, 2010 WL 11507399, at *5 (M.D. Fla. 2010 Sept. 17, 2010) (Antoon, J.). There, the plaintiff claimed that multiple defendants conspired to fraudulently obtain money from him through a real estate transaction. *Id.* One defendant testified that another defendant used suspect loan practices to fraudulently obtain financing for transactions. *Id.* And the plaintiff presented evidence of a loan between defendants that was issued in a manner consistent with these practices. *Id.* This circumstantial evidence was enough to survive summary judgment because it was reasonable to infer a "shared . . . conspiratorial objective." *Id.* (quoting *United States v. Breathe Easy Pulmonary Servs.*, 597 F. Supp. 2d 1280, 1289 (M.D. Fla. 2009)). Here, Bonner never even offers evidence of communications between Direct Recovery and the other two defendants, much less that there as an understanding of a common objective to harass him. *See AFL-CIO v. City of Miami*, 650 F. Supp. 2d 1258, 1272 (S.D. Fla 2009) (Ungaro, J.) (finding no genuine issue of material fact of a civil conspiracy where, even though plaintiff showed that the City coordinated police efforts, it did not show an agreement about an illegal objective).

To assume, as Bonner does, that Radius and Cach made an agreement to violate consumer protection laws with Direct Recovery based purely on the timing of phone calls after the June 25 letter is unreasonable and insufficient to permit liability. *See Breathe Easy*, 597 F. Supp. 2d at 1289 (finding "vague assertions" of a conspiracy insufficient

to survive summary judgment where plaintiff did "not even offer evidence of any direct communications between the two [d]efendants"); *Raimi v. Furlong*, 702 So. 2d 1273, 1284–85 (Fla. 3d DCA 1997) (finding evidence to be insufficient to establish a civil conspiracy where plaintiff's only proof of agreement was a telephonic request for help between the conspirators). Accordingly, Bonner fails to establish that there was an agreement between the parties to do an unlawful act, and therefore, as a matter of law, Cach and Radius cannot be liable for the acts of Direct of Recovery under a civil conspiracy theory.

### B.    June 25 Letter

In the absence of a civil conspiracy, Bonner argues that the June 25, 2019 letter violates the FDCPA and FCCPA.[5] Specifically, he claims that this letter was misleading in such a way that it violated 15 U.S.C. §§ 1692d, 1692e, and 1692f of the FDCPA and many provisions of the FCCPA. Bonner's claims fail as a matter of law, and the remaining Defendants are entitled to summary judgment on these claims.

### 1.    The FDCPA

The FDCPA forbids debt collectors from "making false or misleading representations and from engaging in abusive and unfair practices in connection with

---

[5] Bonner submits 13 letters from different entities hired on behalf of Cach seeking to recover the debt with dates ranging from July 4, 2012, to July 7, 2018. He does not argue that any of these letters violate the FDCPA or FCCPA. In any event, the statute of limitations bars any FDCPA claims regarding these letters and any FCCPA claims for all but one letter. *See Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (holding that the FDCPA one-year statute of limitation begins to run on the date the alleged violation occurs); § 559.77(4), Fla. Stat. ("An action brought under [the FCCPA] must be commenced within 2 years after the date the alleged violation occurred.").

the collection of any debt." *Milijkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1302 (11th Cir. 2015). Specifically, §§ 1692d, 1692e, and 1692f prohibit collection practices that use harassment or abuse, false or misleading practices, and unfair practices, respectively. In reviewing whether a consumer collection practice violates these provisions of the FDCPA, the Eleventh Circuit applies the "least sophisticated consumer test," which asks whether the least sophisticated consumer would be deceived by the practice. *Miljkovic*, 791 F.3d at 1306; *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193, 1200 (11th Cir. 2010) (applying the least sophisticated consumer standard to claims under 1692e and 1692f); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985) (applying an "analogous standard for violations of § 1692d," specifically "from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse"). Even applying this deferential standard, Bonner has not presented sufficient evidence to show a violation of any of the three provisions.

Take § 1692d first. That section prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including, but not limited to, the use of threats of violence, obscene language, and telephone calls without disclosure of the caller's identity. 15 U.S.C. § 1692d. The June 25 letter does none of the above, either by its volume or through its content.

First, "[s]ummary judgment is routinely granted in favor of debt collectors where the party alleging a violation of the FDCPA does not present evidence of harassing conduct other than a high volume of calls." *Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1225 (S.D. Fla. 2014) (Ungaro, J.). Bonner has presented evidence of only one communication from Cach and Radius (the June 25 letter) that he argues violates § 1692d. That letter alone is insufficient to establish harassment based on an excessive volume of communications. *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F. Supp. 3d 1294, 1305 (M.D. Fla. 2016) (Covington, J.) (finding one letter a month not frequent enough to violate § 1692d).

Second, the content of the letter does not violate § 1692d. The letter contains no profanity, no threats of violence, and nothing that would allow an inference of harassment. Indeed, the letter does not include language that could even be construed as impolite or rude. *See Williams v. Internal Credit Sys.*, No. 8:19-cv-1872-T-30AEP, 2021 WL 765574, at *6 (M.D. Fla. Feb. 27, 2021) (Moody, J.) ("Taking everything Williams claims as true, Lachman was certainly rude but 'merely rude and unpleasant' does not violate the FDCPA or the FCCPA." (quotations omitted)).

The Court is left with Bonner's assertion that he was embarrassed and angered by the letter. But the least sophisticated consumer standard is objective, not subjective. *See Leblanc*, 610 F.3d at 1194 (describing the test as an objective test). Whether by

frequency or content, the letter alone is insufficient to establish a violation of § 1692d.[6]

*See, e.g., Elmore v. Ne. Fla. Cred. Bureau, Inc.*, No. 3:10-cv-573-J-37JBT, 2011 WL 4480419,

at *4 (M.D. Fla. Sept. 27, 2011) (Dalton, J.) (concluding "that [the] single letter does not

rise to a degree of harassing, oppressing, or abusing nature envisioned by Congress");

*Owens-Benniefield v. Nationstar Mort. LLC*, 258 F. Supp. 3d 1300, 1310 (M.D. Fla. 2017)

(Covington, J.) (concluding that bare allegations that defendant's conduct ruined

plaintiff's reputation was insufficient to state a claim under § 1692d).

Similarly, the June 25 letter does not violate § 1692e because it is not misleading

under any rational reading. Under § 1692e, a debt collector must not use "any false,

deceptive, or misleading representation or means in connection with the collection of

any debt," including the false representation of the legal status of the debt or a threat

to take action that cannot be legally taken. 15 U.S.C. § 1692e. Bonner argues that the

June 25 letter contradicted itself and was therefore misleading. Specifically, he contrasts

the front page, which informed the reader that he could not be sued for his debt, and

the privacy notice on the back of the letter, which disclosed that information may be

gathered about him and disseminated. Bonner argues that the "only logical"

interpretation of the privacy notice is that Cach and Radius were gathering information

---

[6] Bonner does not allege that the six phone calls Radius admitted to making violated § 1692d. And in any event, six unanswered phone calls over six months is not enough to constitute abusive behavior under the FDCPA. *See Owens-Benniefield v. Nationstar Mort. LLC*, 258 F. Supp. 3d 1300, 1310 (M.D. Fla. 2017) (Covington, J.) ("[C]ourts generally have held that one or two phone calls per day are not sufficient to violate the FDCPA or its state analogues, absent evidence of other egregious conduct associated with the calls." (quoting *Wolhuter v. Carrington Mort. Servs., LLC*, No. 8:15-cv-552-MSS-TBM, 2015 WL 12819153, at *3 (M.D. Fla. Oct. 28, 2015) (Scriven, J.)).

to commence a lawsuit, so the privacy notice contradicts the nonsuit language on the front of the letter. (Doc. 63 at 14; 69 at 6). Bonner's argument fails as a matter of law and common sense.

"[W]ith regard to a collection letter seeking payment on a time-barred debt, an express threat of litigation is not required to state a claim for relief under § 1692e so long as one can *reasonably infer an implicit threat.*" *Holzman v. Malcom S. Gerald & Assocs., Inc.*, 920 F.3d 1264, 1271 (11th Cir. 2019) (emphasis added). A comparison proves useful. In *Holzman*, the plaintiff received an offer to "resolve" a debt without a disclosure that the collector legally could not sue on the debt, and the Eleventh Circuit found that there was a valid inference that the letter was misrepresenting the status of a legal debt. *Id.* at 1270. Here, the front of the letter adequately (and seemingly accurately) discloses the status of the debt, leaving only the notice of collection of information as the basis for the implied threat of litigation. While the Court is obliged to view the letter from the perspective of the least sophisticated consumer, it is not obliged to assume the consumer is irrational. *See LeBlanc*, 601 F.3d at 1194 ("The test has an objective component in that '[w]hile protecting naïve consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.'" (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996))). Bonner's reading of the letter is simply unreasonable. One can conjure up a host of reasons apart from pursuing a lawsuit that a collection agency might gather data about a debtor, for example, to update contact information,

to record which debts are contested, or to assess whether to continue collection efforts. And the privacy notice specifically describes when and to whom this information might be shared and none of the listed parties are related to litigation. (Doc. 63-1 at 2). Accordingly, the June 25 letter is insufficient to establish a misleading communication or threat of litigation in violation of § 1692e as a matter of law.

Finally, Bonner has not presented any arguments that the letter violates § 1692f. Under § 1692f, "a debt collector may not use unfair or unconscionable means" in attempting to collect a debt. Section 1692f provides a nonexhaustive list of conduct that would be unfair or unconscionable, such as collecting any amount not authorized by law or solicitation of postdated checks. Bonner does not explain how the June 25 letter was unconscionable or allege that the letter engaged in any of the enumerated conduct prohibited by § 1692f. Attempting to collect on a time-barred debt, as it appears the June 25 letter does, is not a per se unfair or unconscionable practice under § 1692f. *Holzman*, 920 F.3d at 1273. Bonner therefore fails to carry his burden to present evidence of a violation of § 1692f. Moreover, in the absence of otherwise unfair or unconscionable conduct, Bonner cannot rely solely on the same underlying conduct for the § 1692f claims and the § 1692e claims. *See Eslava v. AllianceOne Receivables Mgmt., Inc.*, No. 12–0425–WS–N, 2012 WL 4336012, at *3 & n.2 (S.D. Ala. Sept. 20, 2012) (noting that "[c]ase law clearly establishes that, to state a claim for a violation of § 1692f, a plaintiff must either allege improper acts specifically enumerated in that section or allege

13

misconduct beyond that which the plaintiff alleges violates other provisions of the FDCPA" and citing cases).

Accordingly, because Bonner fails to present sufficient evidence of violations of the FDCPA, Defendants are entitled to summary judgment on those claims.

### 2.   FCCPA Claims

Upon review of Bonner's complaint and motion for summary judgment, it appears that he argues that the June 25 letter violates subsections (7), (8), (9), and (10) of the FCCPA.[7] For the following reasons, the June 25 letter violates none of these provisions, and Cach and Radius are entitled to judgment on these claims.

To begin, the June 25 letter plainly does not violate subsection (8) or subsection (10). Subsection (8) prohibits the use of "profane, obscene, vulgar, or willfully abusive language in communicating with the debtor," and subsection (10) prohibits the use of "communication that simulates in any manner legal or judicial process or that gives the appearance of being authorized, issued, or approved by a government, governmental agency, or attorney at law, when it is not." § 559.72(8), (10), Fla. Stat. A review of the letter reveals that no such language was used, and Bonner presents no other evidence

---

[7] Bonner's complaint and motion for summary judgment allege that Cach and Radius violated subsections (3), (4), (5), and (12) as well, but specifically ties these allegations to the phone calls allegedly made by Direct Recovery. (Doc. 1 at 14–16, 18–20). As explained above, Bonner has presented no evidence that Radius or Cach were associated with these phone calls, leaving only subsections (7), (8), (9), and (10) for the Court's analysis of the June 25 letter.

of communications from Cach or Radius that used abusive language or communications that appear to be from a legal entity when they were not.

Next, subsection (7) of the FCCPA prohibits "willfully communicat[ing] with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engag[ing] in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." § 559.72(7), Fla. Stat. "When applying the provisions of the FCCPA, 'great weight shall be given to the interpretations of . . . the federal courts relating to the federal Fair Debt Collection Practices Act.'" *Trent v. Mort. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1361 (M.D. Fla. 2007) (Corrigan, J.) (quoting § 559.77(5), Fla. Stat.). As explained above Bonner failed to present sufficient evidence of harassment under the § 1692d of the FDCPA by the June 25 letter; for similar reasons, that letter standing alone fails to provide sufficient evidence of harassment under subsection (7) of the FCCPA. *See Leahy-Fernandez*, 159 F. Supp.3d at 1305 (concluding that one piece of mail a month did not violate § 1629d or §559.72(7), Fla. Stat.); *Daley v. Bono*, No. 8:18-cv-1465-T-27-AAS, 2019 WL 7423553, at *2 (M.D. Fla. Feb. 20, 2019) (Whittemore, J.) (analyzing claims under §1692d and § 559.72(7) together); *see also Ross v. Chisholm*, No. 05-61238-CIV-COHN/SNOW, 2006 WL 8432311, at *9 (S.D. Fla. Apr. 28, 2006) ("A single voicemail would not violate [section 7].").

Finally, subsection (9) of the FCCPA prohibits communications that "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not

legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." § 559.72(9), Fla. Stat. To establish a violation under subsection (9), "it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist." *Daniel v. Select Portfolio Servicing, LLC*, 159 F. Supp. 3d 1333, 1336 (S.D. Fla. 2016) (Dimitrouleas, J.). Bonner does not present evidence that the debt was illegitimate, nor does he submit evidence that Cach or Radius knew the debt was illegitimate. Thus, this claim fails as a matter of law. Accordingly, Defendants are entitled to summary judgment on the FCCPA claims.

## IV.   CONCLUSION

For the foregoing reasons, Bonner has failed to present sufficient evidence of a civil conspiracy between Cach or Radius and Direct Recovery or that the remaining Defendants violated the FDCPA or FCCPA. Accordingly, Bonner's Motion for Partial Summary Judgment (Doc. 63) is **DENIED**, and Defendants' motions for summary judgment (Docs. 64 & 65) are **GRANTED**. The Clerk is directed to enter judgment in favor of Defendants Radius Global Solutions and Cach, LLC, terminate any pending deadlines and motions, and close the case.

**ORDERED** in Tampa, Florida, on July 27, 2021.

Kathryn Kimball Mizelle
United States District Judge